# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# DOCKET NO. 1:21-CV-00237

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> APPROXIMATELY $12,000.00 IN U.S. ) <br> CURRENCY seized from Anthony ) <br> Corderra Ellison on or about March 4, ) <br> 2021, at 107 Birch Lane, Arden, NC; ) <br> ) <br> ONE 2017 AUDI Q7 PREMIUM PLUS ) <br> SUV, VIN WA1LAAF79HD010187, ) <br> seized from Anthony Corderra Ellison on ) <br> or about March 4, 2021, at 107 Birch ) <br> Lane, Arden, NC; ) <br> ) <br> ONE ROLEX WATCH seized from ) <br> Anthony Corderra Ellison on or about ) <br> March 4, 2021, at 107 Birch Lane, ) <br> Arden, NC; and ) <br> ) <br> ONE YELLOW/WHITE GOLD ) <br> CUBAN STYLE LINK CHAIN ) <br> NECKLACE seized from Anthony ) <br> Corderra Ellison on or about ) <br> March 4, 2021, at 107 Birch Lane, ) <br> Arden, NC, ) <br> ) <br> Defendants. ) | **ORDER** |

This matter is before the Court on the Government's Motion for Default Judgment of Forfeiture. (Doc. No. 6). Pursuant to Fed. R. Civ. P. 55(b)(2), the

Government asks the Court to enter a Default Judgment of Forfeiture with respect to the approximately $12,000.00 in U.S. Currency ("Defendant Currency"), one 2017 Audi Q7 Premium Plus SUV, VIN WA1LAAF79HD010187, NC AFB-7587 ("Defendant Vehicle"), one Rolex Watch ("Defendant Watch"), and one yellow/white gold Cuban style link chain necklace ("Defendant Necklace") (collectively, "Defendant Properties") identified in the Complaint.

## FACTUAL BACKGROUND

Where, as here, an entry of default occurs, the defaulted party is deemed to have admitted all well-pleaded allegations of fact in the complaint. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2011); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied"). Thus, the factual allegations in the Government's Verified Complaint, Doc. 1, are deemed admitted as true. The following is a recitation of facts which are thereby deemed admitted:

This case arose from a large multi-jurisdictional narcotics investigation conducted by the North Carolina State Bureau of Investigation ("SBI"), the Asheville Police Department ("APD"), Henderson County Sheriff's Office ("HCSO"), the Drug Enforcement Administration ("DEA"), and other law

enforcement agencies.  Id. ¶ 9.  This investigation initially centered around a drug trafficking organization (the "DTO") led by a distributor named Mark Tobe.  Id. ¶ 10.  In October 2019, the case concluded with an arrest operation that included numerous search warrants, the arrest of 29 individuals on drug trafficking and/or conspiracy charges, the seizure of over four kilograms of methamphetamine, 1.5 kilograms of cocaine, heroin, pills, crack cocaine, and marijuana, approximately $100,000 in U.S. Currency, and eight vehicles.  Id. ¶ 11.

In early 2020, investigators continued their investigation into the remainder of the DTO.  Two of the primary targets were Anthony Corderra Ellison ("Ellison") and Theodus Laray Hammond ("Hammond").  Id. ¶ 12.  Ellison and Hammond worked together to distribute kilogram quantities of fentanyl in Asheville and surrounding areas.  Id. ¶ 13.  They utilized a large network of associates to distribute the illegal drugs.  Id.  In 2020 and 2021, Ellison had discussions with co-conspirators and significant others (including Claimant Sequoria Curenton ("Curenton")) about the expensive jewelry, vehicles, and other high-end items that he purchased.  Id. ¶ 14.

Ellison had access to numerous stash locations and storage units in and around Asheville, NC, where he stored large quantities of U.S. Currency and illegal drugs. Id. ¶ 15.  For example, Ellison had access to a SmartStop storage unit located at

3909 Sweeten Creek Road in Arden, NC. Id. ¶ 16. During the execution of a search warrant at that storage unit on March 4, 2021, investigators seized approximately $647,000.00 in U.S. Currency. Id.

The investigation of Ellison and Hammond culminated in the execution of numerous search warrants on March 4, 2021, including the above-referenced search warrant at the SmartStop storage unit. Id. ¶ 17. Through the execution of these search warrants, officers seized approximately 5.49 kilograms of fentanyl, 13 firearms, more than $800,000 in U.S. Currency, money counters (including a gold-plated money counter), high-end jewelry, and numerous vehicles. Id. In total, agents seized approximately 20 kilograms of fentanyl during the investigation of Ellison and Hammond. Id. ¶ 18. DEA estimates that one kilogram of fentanyl has the potential to kill 500,000 people. Id. ¶ 19.

During the investigation, Ellison and Curenton resided together at 107 Birch Lane, Arden, NC. Id. ¶ 20. Ellison and Curenton dated and had a child together. Id. Curenton knew about Ellison's drug trafficking and benefited from it. Id. ¶ 21.
On November 6, 2020, Curenton and Ellison had a lengthy telephone conversation about their finances. Id. ¶ 22. Curenton and Ellison discussed how they could structure money and put money into Curenton's account to "legitimize" it so that

4

Case 1:21-cv-00237-MOC-WCM   Document 8   Filed 01/24/22   Page 4 of 13

they would qualify for loans for purchasing a home or land.  Id.  Ellison stated that in three to four years, he wanted them to make $1 million on property.  Id.  Curenton also discussed their safety deposit box, and how they needed to make an effort to start putting something in it, even if it was just their birth certificates.  Id.  At the end of the conversation, Ellison and Curenton discussed marijuana and how Ellison did not like the quality of what he had.  Id.  Curenton stated that she would buy weed for Ellison and he said he was going to roll another one (marijuana cigarette).  Id.

Ellison and Curenton frequently had disagreements, during which Ellison would remind her that he funded her lifestyle, including purchasing an Audi and jewelry for her, and paying $2,000 a month in rent for their home.  Id. ¶ 23.  For example, on November 25, 2020, Ellison stated in a text-message to Curenton, "***Bitch i work i gotta work 4 u 2 drive audi*** [and] liv n a 2000 a month house." (emphasis added).  Id. ¶ 24.  In another text-message Ellison sent to Curenton on February 11, 2021, Ellison stated, "U now how many people wish all they had 2 do is clean n cook n take care da kids *to have da jewelry da cars da shoes n clothes da trips n da whole family token care of* but I gotta argue cause 2 bowls 3 forks n a pot n da sink but wtf do I get out da deal beside a cook meal n a headache.  *I spend over 50,000 on since ur birthday n that's not counting da house money I gave u.*

5

U a ungrateful ass mf that think u know everything n don't."   (emphasis added). Id. ¶ 25.   In other communications between Ellison and Curenton in October 2020, Ellison discussed the Defendant Necklace that he bought for her.   Id. ¶ 26. Additionally, in a telephone call on December 21, 2020, Ellison stated that he bought a chain (i.e., the Defendant Necklace) for his girlfriend's birthday and bought her a watch (i.e., the Defendant Watch) for Christmas.   Id. ¶ 27.   Ellison also had discussions with his jeweler at the Jewelry Box store located in the Asheville Mall about purchasing numerous pieces of jewelry, including necklaces, chains, bracelets, and Rolex watches.   Id. ¶ 28.   In some of these communications, Ellison discussed purchasing jewelry for "his girl," i.e., Curenton.   Id. ¶ 29.

As explained above, on March 4, 2021, investigators executed multiple search warrants in connection with the investigation of Ellison and Hammond.   Id. ¶ 30. One of these search warrants was executed at 107 Birch Lane, Arden, NC, where Ellison and Curenton resided.   Id. ¶ 31.   Ellison and Curenton were home during the execution of the search warrant.   Id. ¶ 32.   Before agents were able to enter the residence on March 4, 2021, Ellison spoke by telephone with one of his associates, LaMichael Harris.   Id. ¶ 33.   Ellison stated, "the Feds are at his door."   Id. During this phone call, Ellison instructed Harris to hide one of his vehicles and

Ellison can be overheard instructing Curenton to put money in her pocket book.  Id. ¶ 34.

During the execution of the search warrant at 107 Birch Lane, investigators seized firearms and ammunition; a digital scale; 5 items of jewelry appraised at the total value of $85,220.00, including the Defendant Necklace (appraised at a value of $7,320.00) and the Defendant Watch (appraised at a value of $7,900); approximately $18,165.00 in U.S. Currency located in various areas of the residence, which includes the Defendant Currency; the Defendant Vehicle; and a 2015 Jeep Grand Cherokee.  Id. ¶ 35.  Agents also located a receipt for the Defendant Necklace, which confirmed that Ellison purchased the item.  Id. ¶ 38.

Curenton is the registered owner of the Defendant Vehicle.  Id. ¶ 39. However, it is common for drug traffickers to place vehicles and other assets in the name of a girlfriend or another individual in an attempt to shield them from law enforcement.  Id.  During the execution of the search warrant, agents located a black canvass gun case inside the glove box of the Defendant Vehicle, which contained a Smith & Wesson magazine with a Hornady .380 caliber bullet.  Id. ¶ 40.  At the time of the execution of the search warrant, the Defendant Vehicle smelled of marijuana.  Id. ¶ 41.  Even though the seizure of the vehicle occurred several months ago, the Defendant Vehicle still smells of marijuana.  Id. ¶ 42.

Based upon the numerous communications described above, the Defendant Vehicle was purchased using drug proceeds. Id. ¶ 43.

Additionally, investigators have observed Ellison operate the Defendant Vehicle. Id. ¶ 44. In particular, Ellison used the Defendant Vehicle to facilitate a drug deal that he conducted on January 21, 2021. Id. ¶ 45. Early in the day on January 21, 2021, Hammond spoke with his brother Demond, and instructed Demond to get 50 (believed to be $50,000) out of storage and to act like he was putting something in there when he went. Id. ¶ 46. In a subsequent telephone call, Hammond instructed Demond to give the $50,000 to Ellison. Id. ¶ 47. In another call, Demond asked Ellison if he was going to grab "that," (i.e., the $50,000). Id. ¶ 48. Ellison met Demond at an Ingles to obtain the $50,000. Id. ¶ 49.

In other telephone calls between Hammond and Ellison that same day, Hammond explained that he gave "Buddy" (which is a common nickname given for a source of supply) the address for the Holiday Inn up the street. Id. ¶ 50. Hammond stated that "Buddy" would get a room and text the room number after he checked in. Id. Hammond informed Ellison that it would be around 9:00 p.m. Id.

Hammond asked Ellison to meet with Demond and get the other bag. Id. ¶ 51. Hammond told him to put on a mask and hoodie. Id. Ellison asked why

8

"Buddy" could not just leave the bag in the car for Ellison to grab. Id. Hammond explained that "Buddy" would be arriving in an Uber. Id. During this phone call, a money counter can be heard running in the background on Ellison's end of the line and GPS pings placed him at 107 Birch Lane. Id.

In one of the last telephone calls between Hammond and Ellison on the evening of January 21, 2021, Hammond asked Ellison how much he was going to give him. Id. ¶ 52. Ellison replied, "100 in all" (i.e., $100,000). Id. Hammond informed Ellison that Buddy had arrived at the hotel and was in Room #519. Id. That evening, investigators observed Ellison travel in the Defendant Vehicle to the Holiday Inn. Id. ¶ 53. After arriving at the Holiday Inn, Ellison retrieved a backpack from the Defendant vehicle and entered the hotel. Id. A few minutes later, Ellison returned to the Defendant Vehicle with the backpack, and departed from the hotel in the Defendant Vehicle. Id. ¶ 54. Hammond and Ellison spoke one final time that evening after Ellison left the Holiday Inn. Id. ¶ 55. Hammond called to make sure that Ellison was "good." Id. Ellison informed Hammond that "he made it." Id. Based upon the above-referenced events, Ellison transported approximately $100,000 in U.S. Currency with him in the Defendant Vehicle in conducting this drug transaction at the Holiday Inn. Id. ¶ 56.

On March 4, 2021, Ellison was taken into custody and charged with a continuing criminal enterprise and five counts of conspiracy to traffic opium/heroin. Id. ¶ 57.

Ellison is a convicted felon. Id. ¶ 58. In 2008, he was found guilty for misdemeanor possession for drug paraphernalia; felony possession with intent to manufacture/sale/deliver a controlled substance; and felony maintaining a vehicle/dwelling/place for a controlled substance. Id.

## **PROCEDURAL BACKGROUND**

On August 31, 2021, the Government filed a verified Complaint for Forfeiture *in Rem*, alleging that the Defendant Currency seized from Ellison on or about March 4, 2021, is subject to civil forfeiture under 21 U.S.C. § 881(a)(6); the Defendant Vehicle seized from Ellison on or about March 4, 2021, is subject to civil forfeiture under 21 U.S.C. § 881(a)(4) & 881(a)(6); and the Defendant Watch and Defendant Necklace seized from Ellison on or about March 4, 2021, are subject to civil forfeiture under 21 U.S.C. § 881(a)(6). Doc. 1. On August 31, 2021, the Clerk issued a Warrant of Arrest *in Rem* for the Defendant Properties. Doc. 2.

After the Government filed its Complaint, and in accordance with Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Government provided direct notice of this action to known

potential claimants. Specifically, on September 2, 2021, the Government mailed notice and a copy of the Complaint to Anthony Corderra Ellison and Sequoria Curenton. Additionally, in accordance with Supplemental Rule G(4)(a), the Government provided notice by publication as to all persons with potential claims to the Defendant Properties by publishing notice via www.forfeiture.gov for 30 consecutive days, beginning on September 3, 2021. Doc. 3.

The Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). During the pendency of this action, no individual or entity has made a timely claim to the Defendant Properties. On January 4, 2022, the Government filed a motion for entry of Clerk's default. Doc. 4. On January 6, 2022, the Clerk entered default. Doc. 5.

## DISCUSSION

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government has the initial burden of establishing by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). A complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The Government may seek forfeiture of currency if it was used,

or intended to be used in exchange for a controlled substance, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq. See 21 U.S.C. § 881(a)(6).

Based upon the allegations of the Government's Verified Complaint—which are deemed admitted as true—the Court finds that the Government has satisfied its burden of showing that the Defendant Currency is subject to civil forfeiture under 21 U.S.C. § 881(a)(6); the Defendant Vehicle is subject to civil forfeiture under 21 U.S.C. § 881(a)(4) & 881(a)(6); and the Defendant Watch and Defendant Necklace are subject to civil forfeiture under 21 U.S.C. § 881(a)(6). Additionally, the Court finds that the Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). No individual or entity has timely filed a claim to the Defendant Properties.

After careful review, the Court finds that the Government has established that default judgment is appropriate.

## JUDGMENT

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Government's Motion for Default Judgment of Forfeiture is hereby **GRANTED** and

12

Judgment of Forfeiture is **ENTERED** in favor of the United States against all persons and entities with respect to the Defendant Properties identified in the Complaint.

**IT IS FURTHER ORDERED,** that any right, title, and interest of all persons to the Defendant Properties is hereby forfeited to the United States, and no other right, title, or interest shall exist therein.

**IT IS FURTHER ORDERED,** that the United States Marshal is hereby directed to dispose of the Defendant Properties as provided by law.

Signed: January 24, 2022

Max O. Cogburn Jr
United States District Judge